Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sarkhan Nabiyev, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiff,*<br><br>v.<br><br>Closet World, Inc. and Home Organizers Inc.,<br><br>　　　　*Defendants.* | Case No. 2:23-cv-2218<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.      Introduction...................................................................................1

II.     Parties. ..........................................................................................3

III.    Jurisdiction and Venue. ................................................................4

IV.     Facts..............................................................................................4

     A.     Defendants' fake sales and discounts...................................4

     B.     Defendants' advertisements are unfair, deceptive, and unlawful. .................8

     C.     Defendants' advertisements harm consumers. ....................9

     D.     Defendants know that their advertisements are misleading. .......................10

     E.     Plaintiff was misled by Defendants' misrepresentations. .............................10

     E.     Defendants breached their contract...................................11

     F.     No adequate remedy at law. .............................................12

V.      Class Action Allegations.............................................................12

VI.     Claims. ........................................................................................14

     First Cause of Action: Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq. ......................14

     Second Cause of Action: Violation of California's Consumer Legal Remedies Act ..........................................15

     Third Cause of Action: Violation of California's Unfair Competition Law...........17

     Fourth Cause of Action: Breach of Contract ........................19

     Fifth Cause of Action: Breach of Express Warranty...............20

     Sixth Cause of Action: Breach of Implied Warranty...............21

     Seventh Cause of Action: Quasi-Contract.............................22

     Eighth Cause of Action: Negligent Misrepresentation ...............22

     Ninth Cause of Action: Intentional Misrepresentation.............23

VII.    Relief...........................................................................................24

i

## I.    Introduction.

1.    Advertised "sales" are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.  Moreover, California's False Advertising Law specifically provides that "No price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

4.    Likewise, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

5.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

6.      So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

7.      Defendants Closet World, Inc. and Home Organizers Inc. ("Defendants") make, sell, and market home organizing products including, but not limited to, custom closets, garages, storage solutions, and home offices (the "Products").

8.      Defendants prominently advertise purported limited-time sales, through paper advertisements mailed to consumers, and online.  For example:



2

9.      But these advertisements are false.  Defendants always offer sitewide discounts, as well as discounts on certain items, so they never sell any of their products at the purported regular price.  The sales are not limited in time, but instead immediately reset and continue to be available.

10.     Mr. Nabiyev bought custom Products from Defendants.  Like Defendants' other customers, when Mr. Nabiyev bought the Products, Defendants advertised that a sale was going on, and that the Products were heavily discounted.  Mr. Nabiyev believed that the Products that he purchased usually retailed for the quoted and listed regular prices.  He further believed that he was getting a substantial discount from the regular price, and that the sale would end soon.  These reasonable beliefs are what caused him to buy from Defendants.  If he had known that the Products he purchased were not on sale, he would not have bought them.

11.     But none of that was true.  Defendants' regular prices were not the prevailing regular prices.  The sale Defendants advertised was not really limited in time.  Had Defendants been truthful, Plaintiff and other consumers would not have purchased the Products or would have paid less for them.

12.     Plaintiff brings this case for himself and the other customers who purchased Defendants' Products.

## II.    Parties.

13.     Plaintiff Sarkhan Nabiyev is domiciled in Los Angeles, California.

14.     The proposed class includes citizens of at least 32 states (the states in which Defendants operate).

15.     Defendant Closet World, Inc. is a Delaware corporation with its principal place of business at 3860 Capitol Avenue, Whittier, California 90601.

16.     Defendant Home Organizers Inc. is a California corporation with its principal place of business at 3860 Capitol Avenue, Whittier, California 90601.

### III.   Jurisdiction and Venue.

17.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

18.   The Court has personal jurisdiction over Defendants because Defendants reside and conduct business in California.

19.   Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sale to Plaintiff.

### IV.   Facts.

#### A.   Defendants' fake sales and discounts.

20.   Defendants make, sell, and market home organizing products.

21.   Defendants' website and paper advertisements create an illusion that customers are receiving a limited-time discount.  Defendants do this by advertising fake limited-time sales.  For example, Defendants advertise purported limited-time sales where everything is 40% or more off:



Captured March 18, 2022

4

1
2
3
4
5
6
7
8
9
10
11
12
13



14    22.    But Defendants' Products are always on sale, and these sales persist.  For

15  example, Defendants have prominently displayed, for over a year, a sitewide sale on their

16  website.  These sales are designed to induce consumers to purchase its Products under

17  the mistaken belief they are getting a significant bargain because they are buying while

18  the sale is going on.  Example screen captures showing sitewide sales at various points

19  throughout 2022 and 2023 are shown below:

20
21
22



23
24                                                              Captured June 20, 2022
25
26
27
28

5



Captured September 30, 2022

Captured December 19, 2022

Captured February 15, 2023

23.    These discounts appear to be only for a limited time, but in reality, they are ongoing.  For example, as depicted below, as soon as one sale "Expires [on] 2/28/23," Defendants generate another similar discount, with a new expiration date.



Captured February 15, 2023

6

Captured March 1, 2023

24. Defendants' sitewide sales have persisted continuously since at least January 6, 2022. Indeed, on 100 percent of the 45 archived snapshots of Defendants' site on archive.org, between January 6, 2022 and March 23, 2023, Defendants were running a purportedly time-limited, sitewide discount of at least 30% every time that the website was checked.[1]

25. In addition, Defendants' price quotes and invoices also display fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

26. For example, Defendants advertised "50% Off Plus Free Installation" to Mr. Nabiyev when he made his purchase. Defendants offered their "Prestige Office" for a quoted regular price of $14,346:



---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

27.    But the truth is, the Products' listed regular prices are not their prevailing price.  Instead, the Products are always discounted from their purported regular prices.

28.    By presenting fake regular prices and fake discounts, Defendants mislead consumers into believing that they are getting a good deal.

**B.    Defendants' advertisements are unfair, deceptive, and unlawful.**

29.    California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.  Moreover, California's False Advertising Law specifically provides that "no price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

30.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

31.    The Federal Trade Commission's regulations also prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They further prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

32.    And finally, California's Unfair Competition Law bans unlawful, unfair and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

33.    Here, as described in detail above, Defendants made untrue and misleading statements about its prices.  Defendants listed former prices that were not true former prices and were not the prevailing market price in the three months immediately

preceding.  In addition, Defendants advertised goods or services with the intent not to sell them as advertised, for example by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendants made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including false statements regarding the limited-time nature of the sitewide sales (e.g., including purported expiration dates when in fact the sale is ongoing), the existence of sitewide sales, and the amounts of price reductions resulting from those sales.  And Defendants engaged in unlawful, unfair, and deceptive business practices.

## C.    Defendants' advertisements harm consumers.

34.    Based on Defendants' advertisements, reasonable consumers would expect that the listed regular prices are the former prices at which Defendants actually sell their Products, and are the prevailing prices for the Products.

35.    Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the listed regular price and that they will receive the advertised discount from the regular purchase price.

36.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

37.    Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while

---

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

"80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

38.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

39.    Thus, Defendants' advertisements harm consumers by inducing them to make purchases based on false information.

**D.    Defendants know that their advertisements are misleading.**

40.    Defendants are aware that publishing fake sales, regular prices, and discounts mislead consumers.  They know this because Defendant Closet World was previously sued by California District Attorneys for doing the same thing.

41.    In June 2000, Orange County prosecutors alleged that Closet World offered "so-called continuous sales" that "mislead shoppers who believe they are getting bargains when none exist."[5]  Closet World paid a fine, and agreed to stop the practice.[6]

42.    Further, Defendant Home Organizers' subsidiary, Closets By Design, Inc. was also sued for the same practices.

43.    Despite this, Defendants have continued their practice of offering continuous sales that mislead shoppers into believing that they are getting a bargain, when none in fact exists.

**E.    Plaintiff was misled by Defendants' misrepresentations.**

44.    On July 17, 2022, Mr. Nabiyev purchased custom closets, sliding doors, and a home office from Defendants.  He purchased the Products from Defendants' sales representative, while living in Los Angeles, California.  Mr. Nabiyev's invoice

---

[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

[5] https://www.latimes.com/archives/la-xpm-2000-jul-07-fi-48935-story.html

[6] *Id.*

10

represented that he was receiving a substantial discount off of the regular prices for the items that he ordered. For example, the invoice represented that the regular price of the "Prestige Office" was $14,346, and that Mr. Nabiyev was receiving a 50% off discount of $7,173.

45. Mr. Nabiyev read and relied on the representations on the invoice that the Products had the listed regular price and that this was their market value, and that he was receiving the advertised discount as compared to the regular price. He would not have made the purchase if he had known that the Products were not discounted as advertised, and that he was not receiving the advertised discounts.

46. Mr. Nabiyev faces an imminent threat of future harm. He likes the Products, and would purchase them again if he could feel sure that Defendants would not illegally deceive him. But without an injunction, he cannot trust that Defendants will comply with the consumer protection statutes. Accordingly, Plaintiff is unable to rely on Defendants' advertising in the future, and so cannot purchase Products that he would like to.

**E.    Defendants breached their contract.**

47. When Mr. Nabiyev purchased and paid for the Products he bought as described above, he accepted offers that Defendants made, and thus, a contract was formed at the time that he made the purchase. At the time that Mr. Nabiyev made the purchase, the offer was to provide Products having particular listed regular prices and market value, and to provide those Products at the discounted prices.

48. Mr. Nabiyev and Defendants entered a contract.

49. The regular price and the market value of the Products Mr. Nabiyev would receive, and the amount of the discounts that he would be provided off the regular prices of the items, were specific and material terms of the contract.

50. Plaintiff performed his obligation under the contract by paying Defendants the discounted prices.

51.    Defendants breached their contracts by failing to provide Mr. Nabiyev with Products with market value equal to the regular prices displayed on their invoice, and by failing to provide the discounts promised.

**F.    No adequate remedy at law.**

52.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

53.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.  In addition, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.    Class Action Allegations.**

54.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Products at a purported discount from Defendants.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Products at a purported discount from Defendants.

55.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current

employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

56.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

57.    Class members can be identified through Defendants' sales records and public notice.

### Predominance of Common Questions

58.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendants made false or misleading statements of fact in their advertisements;

(2) whether Defendants violated California's consumer protection statutes;

(3) whether Defendants committed a breach of contract;

(4) whether Defendants committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

59.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Products advertised at a discount on Defendants' website and paper advertisements.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of thousands

of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**First Cause of Action:**

**Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 et. seq.**

**(By Plaintiff and the California Subclass)**

61.    Plaintiff incorporates each and every factual allegation set forth above.

62.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

63.    Defendants have violated Sections 17500 and 17501 of the Business and Professions Code.

64.    As alleged more fully above, Defendants advertise purported list prices along with purported discounts.  Defendants do this, for example, by stating a purported regular price (e.g., $14,172), stating that a discount will be provided during the sale (e.g., "50%"), and stating a purported discounted price (e.g., $7,086).

65.    The prices advertised as former prices by Defendants were not the true former prices of the Products.  Accordingly, Defendants' statements about the former prices of their products were untrue and misleading.

66.    In addition, Defendants' former prices did not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendants do not indicate whether or when the purported former prices were offered at all.

67.    As a result, Defendants violated, and continue to violate, Sections 17500 and 17501 to induce Plaintiff and the subclass to make purchases based on the purported former prices.

68.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Defendants'

14

Products.  Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

69.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

70.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

71.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known the truth, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

<u>Second Cause of Action</u>:

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the California Subclass)**

72.    Plaintiff incorporates each and every factual allegation set forth above.

73.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

74.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

75.    Plaintiff and the subclass have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

76.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

77.    As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in their advertisements to subclass members. Defendants did this by using fake regular prices and advertising fake discounts.

15

78.    Defendants violated, and continue to violate, Section 1770(a) of the California Civil Code.

79.    Defendants violated, and continue to violate, Section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendants represent that the value of their Products is greater than it actually is by advertising fake discounts for the Products.

80.    Defendants violated, and continue to violate, Section 1770(a)(9) of the California Civil Code.  Defendants violate this by advertising their Products as being offered at a discount, when in fact Defendants do not intend to sell the Products at a discount.

81.    And Defendants violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular prices of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the limited-time nature of the sale (e.g., listing expiration dates for sales when the sales even though the sales do not actually expire).

82.    Defendants' representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

83.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

84.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

85.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

86.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Products if they had known the discounts and/or regular prices were not real, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

87.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Mr. Nabiyev, on behalf of himself and all other members of the subclass, seeks injunctive relief.

88.    CLRA § 1782 NOTICE.  On March 16, 2023, a CLRA demand letter was sent to Defendants' California headquarters via certified mail (return receipt requested), that provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendants do not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

89.    A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law
### (By Plaintiff and the California Subclass)

90.    Plaintiff incorporates each and every factual allegation set forth above.

91.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

92.    Defendants have violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

93.    Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.  In addition, Defendants engaged in unlawful conduct by violating the FTCA.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false

17

advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendants' false pricing schemes violate the FTCA. 16 CFR § 233.1, § 233.2.

### The Unlawful Prong

94. Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

### The Deceptive Prong

95. As alleged in detail above, Defendants' representations that their Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

96. Defendants' representations were misleading to Plaintiff and other reasonable consumers.

97. Plaintiff relied upon Defendants' misleading representations and omissions, as detailed above.

### The Unfair Prong

98. As alleged in detail above, Defendants committed "unfair" acts by falsely advertising that their Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that customers were receiving discounts.

99. Defendants violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

100. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendants' conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harms consumers.

101. Plaintiff and the subclass could not have reasonably avoided this injury. As alleged above, Defendants' representations were deceptive to reasonable consumers like Plaintiff.

18

102.    Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

\* \* \*

103.    For all prongs, Defendants' representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products.  Defendants' representations were a substantial factor in Plaintiff's purchase decision.

104.    In addition, subclass-wide reliance can be inferred because Defendants' representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

105.    Defendants' representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

106.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

## Fourth Cause of Action:

### Breach of Contract

### (By Plaintiff and the Nationwide Class)

107.    Plaintiff incorporates each and every factual allegation set forth above.

108.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Subclass.

109.    Plaintiff and class members entered into contracts with Defendants when they placed orders to purchase Defendants' Products.

110.    The contracts provided that Plaintiff and class members would pay Defendants for the Products ordered.

111.    The contracts further required that Defendants provide Plaintiff and class members with Products that have a former price, and a market value equal to the regular prices stated in their invoices.  They also required that Defendants provide Plaintiff and the class members with the discount advertised, and listed in the invoice.  These were specific and material terms of the contracts.

112.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.

113.    Plaintiff and class members paid Defendants for the Products they ordered, and satisfied all other conditions of their contracts.

114.    Defendants breached the contracts with Plaintiff and class members by failing to provide Products that had a prevailing market value equal to the regular price displayed on their receipts, and by failing to provide the promised discount.  Defendants did not provide the discount that Defendants had promised.

115.    As a direct and proximate result of Defendants' breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**<u>Fifth Cause of Action</u>:**

**Breach of Express Warranty**

**(By Plaintiff and the Nationwide Subclass)**

116.    Plaintiff incorporates each and every factual allegation set forth above.

117.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of himself and the California Subclass.

118.    Defendants, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by representing that the Products had a prevailing market value equal to the regular price displayed on Defendants' invoices.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

20

119.    This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

120.    In fact, the Products' stated market value was not the prevailing market value.  Thus, the warranty was breached.

121.    Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on March 16, 2023.

122.    Plaintiff and the class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

**Sixth Cause of Action:**

**Breach of Implied Warranty**

**(By Plaintiff and the California Subclass)**

123.    Plaintiff incorporates each and every factual allegation set forth above.

124.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

125.    As described in greater detail above, Defendants impliedly warranted that the Products had a market value equal to the regular price displayed on Defendants' invoices.

126.    This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

127.    In fact, the Products did not have a market value equal to the regular price displayed.  Thus, the warranty was breached.

128.    Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on March 16, 2023.

129.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a)

they would not have purchased Products if they had known the truth, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

### Seventh Cause of Action:

### Quasi-Contract

### (By Plaintiff and the Nationwide Class)

130.    Plaintiff incorporates each and every factual allegation set forth above.

131.    Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of himself and the California Subclass.

132.    As alleged in detail above, Defendants' false and misleading advertising caused Plaintiff and the class to purchase Products and to pay a price premium for these Products.

133.    In this way, Defendants received a direct and unjust benefit, at Plaintiff's expense.

134.    Plaintiff and the class seek restitution.

### Eighth Cause of Action:

### Negligent Misrepresentation

### (By Plaintiff and the California Subclass)

135.    Plaintiff incorporates each and every factual allegation set forth above.

136.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

137.    As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised on their website, invoices, and paper advertisements.

138.    These representations were false.

139.    When Defendants made these misrepresentations, they knew or should have known that they were false.  Defendants had no reasonable grounds for believing that these representations were true when made.

140.    Defendants intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

141.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

142.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members.

143.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

### Ninth Cause of Action:

### Intentional Misrepresentation

### (By Plaintiff and the California Subclass)

144.    Plaintiff incorporates each and every factual allegation set forth above.

145.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

146.    As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised on their website, invoices, and paper advertisements.

147.    These representations were false.

148.    When Defendants made these misrepresentations, they knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

149.    Defendants intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

150.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

151.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

152.    Plaintiff and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**VII.    Relief.**

153.    Plaintiff seeks the following relief for himself and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

### Demand For Jury Trial

154.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: March 24, 2023                    Respectfully submitted,

By: /s/ *Christin Cho*

24

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*