O

# United States District Court
# Central District of California

| | |
|---|---|
| SARKHAN NABIYEV et al., | Case № 2:23-cv-02218-ODW (PDx) |
| Plaintiffs, | |
| v. | **ORDER DENYING** |
| CLOSET WORLD, INC. et al., | **MOTION TO DISMISS [25]** |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Sarkhan Nabiyev and Sevinj Mirzatagi bring this putative class action against Defendants Closet World, Inc. and Home Organizers Inc. for allegedly violating California false advertising laws by misleading consumers with deceptive advertisements featuring falsely discounted home organization products.  (First Am. Compl. ("FAC"), ECF No. 19.)  Defendants now move to dismiss Plaintiffs' FAC for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss FAC ("Motion" or "Mot."), ECF No. 25.)  For the following reasons, the Court **DENIES** Defendants' Motion in its entirety.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are taken from Plaintiffs' FAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

### A. Defendants' Business Model and Operations

Closet World, Inc. and Home Organizers, Inc. own and operate a nationwide home organization business where they "make, sell, and market home organizing products including, but not limited to, custom closets, garages, storage solutions, and home offices" (the "Products"). (FAC ¶ 8.) To market their Products, Defendants engage in various advertising techniques such as online advertisements and mailing physical paper advertisements directly to consumers. (*Id.* ¶¶ 10–12.) The advertisements promote Defendants' product line and simultaneously offer apparent "limited-time" discount sales to consumers who elect to contract with and purchase Defendants' Products. (*Id.*) These online and paper advertisements typically offer "40%" or "50%" discounts on the quoted price, as well as other incentives such as free installation and financing plans. (*Id.* ¶¶ 26, 32.)

### B. Plaintiffs Contract with Defendants

In or around July 2022, Nabiyev and his mother, Mirzatagi, received a mailed advertisement promoting discounts for 50% off Defendants' Products. (*Id.* ¶ 51.) At the time of receipt, Nabiyev and Mirzatagi lived in the same Los Angeles residence. (*Id.*) Upon receiving the mailed advertisement, Nabiyev scheduled an in-home consultation with Defendant Closet World, resulting in an initial quote promising 50% off all quoted products. (*Id.* ¶¶ 53–55.)

On July 17, 2022, Nabiyev and Mirzatagi contracted with Defendants to purchase two closets, a custom office, and various other home organizer products for their Los Angeles residence. (*Id.* ¶ 56.) Nabiyev paid the initial deposit with his credit card and the remaining balance was financed using Mirzatagi's approved credit.

1  (*Id.* ¶ 57.) Payments toward the balance were drawn from a joint bank account shared
2  by Nabiyev and Mirzatagi, with Nabiyev as the first listed account holder. (*Id.*)

### C. Plaintiffs' Allegations

On May 1, 2023, Plaintiffs filed the FAC. (*Id.*) Plaintiffs allege the advertised "limited-time" sales and discounts are, in reality, fake promotions offered continuously throughout the year. (*Id.* ¶¶ 12, 25–30, 40.) Additionally, Plaintiffs contend the regular list prices of Defendants' products are fabricated, because the purported list prices are always discounted. (*Id.* ¶¶ 31–35.) Furthermore, Plaintiffs assert the fake discounts and falsely inflated list prices are designed to induce consumers to purchase products that consumers would not normally be inclined to purchase. (*Id.* ¶¶ 12–14, 59.) Plaintiffs allege that they relied on the false representations described above and would not have contracted with Defendants had Plaintiffs known the representations were untrue. (*Id.* ¶¶ 58–59.)

Plaintiffs bring nine causes of action individually and on behalf of a proposed class, for: (1) Violation of California's False Advertising Law; (2) Violation of California's Consumer Legal Remedies Act; (3) Violation of California's Unfair Competition Law; (4) Breach of Contract; (5) Breach of Express Warranty; (6) Breach of Implied Warranty; (7) Breach of Quasi-Contracts; (8) Negligent Misrepresentations; and (9) Intentional Misrepresentations with regard to falsely discounted home organization product prices. (*Id.* ¶¶ 76–165.)

Defendants now move this Court to dismiss certain claims in the FAC pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v.*

*Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.     DISCUSSION

Defendants seek to dismiss Plaintiffs' causes of action one through five, eight, and nine, asserting: (A) Plaintiffs have not pleaded these causes of action with the required particularity; (B) Plaintiffs lack Article III and statutory standing; (C) Defendants' advertisements are not deceptive on their face; (D) Plaintiff failed to meet specific procedural requirements under California false advertising laws; (E) Plaintiffs either were not damaged or are not party to the contract, and Plaintiff did not rely on the alleged advertisements when purchasing Defendants' products. (*See generally* Mot.) The Court addresses each of Defendants' arguments in turn.

**A.     Rule 9(b) Required Particularity**

Defendants' assert that Plaintiffs fail to plead the first, second, third and ninth causes of action with the required particularity under Rule 9(b). The Court finds Plaintiffs' fraud-based claims meet the requisite Rule 9(b) threshold for particularity.

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

Here, Plaintiffs need only provide the preliminary *Vess* factors to meet the Rule 9(b) threshold requirement for particularity. *Id.* ("'[T]he who, what, when, where, and how' of the misconduct charged."). Plaintiffs do just that in their FAC. Plaintiffs identify "who" committed the alleged misconduct: Closet World and Home Organizers. (FAC ¶¶ 8, 19, 20.) Plaintiffs state "what" the misconduct was: advertisements representing alleged "limited-time" sales. (FAC ¶¶ 25–29, 31–32.) Plaintiffs explain "where" the misconduct occurred: on Defendants' mailed advertisements and website. *Id.* Plaintiffs provide "when" the misconduct occurred using digitally archived images of Defendants' websites showing multiple dates and demonstrating the possibility of continuous sales online. (FAC ¶ 30.) Lastly, Plaintiffs describe "how" Defendants' purported fake discounts and misconduct led Plaintiffs and other consumers to purchase Defendants' Products. (FAC ¶¶ 12, 26–28, 34–35.) Accordingly, the Court finds Plaintiffs meet the Rule 9(b) heightened requirements for particularity.

For the aforementioned reasons, the Court finds Plaintiffs' first, second, third, and ninth causes of action meet the heightened threshold pleading requirement set forth by Rule 9(b). Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' first, second, third, and ninth causes of action.

**B. Standing**

Defendants assert the Court should dismiss the entire action because Plaintiffs lack Article III and California statutory standing. (Mot. 9.) For the reasons set forth below, the Court concludes Plaintiffs meet the minimum requirements for Article III and California statutory standing.

*1. Article III Standing*

To establish Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In lawsuits involving California false advertising laws, consumers suffer an injury-in-fact for Article III purposes "when the consumer alleges that he would not have made the purchase but for the misrepresentation. . . ." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue . . . ."). With regard to the proposed class Article III standing, "only one Plaintiff needs to have standing for a class action to proceed." *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1042 (C.D. Cal. 2022) (quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 n.11 (9th Cir. 2018)).

In the present case, Defendants maintain Plaintiffs do not have Article III standing because Plaintiffs received the "benefit of the bargain" and therefore have not suffered an injury in fact. (Mot. 10.) It is true Plaintiffs received the purchased Products outlined in the July 17, 2022 contract. (*See generally* FAC.) Similarly, the Court agrees that, by nature of receiving the home organization Products, Plaintiffs enjoyed some degree of benefit from the purchase. However, Plaintiffs claim they would not have purchased Defendants' Products absent Defendants' alleged false advertisements and promotions. (FAC ¶¶ 14, 44–46.) Under *Hinojos*, Plaintiffs sufficiently allege an injury-in-fact for the purpose of Article III standing. Thus, the

first element of Article III standing is satisfied. The second element and third elements to establish Article III standing have not been raised as issues by the parties. Nevertheless, the Court confirms that they are satisfied. The second element is clearly met as the alleged injury-in-fact is directly traceable to Defendants and their advertising and promotional discounts. The third element is also fulfilled because the injuries-in-fact alleged by Plaintiffs could be redressed by a favorable judicial decision.

The Court concludes Plaintiffs have Article III standing, which means the proposed class in this action also has Article III standing. In light of this conclusion, the Court declines to address the immaterial secondary arguments Defendants raise challenging Plaintiffs' Article III standing.

2. *Statutory Standing*

When a plaintiff brings claims under California Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"), the plaintiff must establish additional statutory standing requirements. *Battle*, 607 F. Supp. 3d at 1042; *see also* Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1782. The UCL and FAL require a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Battle*, 607 F. Supp. 3d at 1042 (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011)). Similarly, the CLRA necessitates that a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Id.* (quoting *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011)). In sum, for a plaintiff to establish standing under the UCL, CLRA, and FAL, a plaintiff must sufficiently allege he: (1) suffered an economic injury; and (2) relied on the purported material misrepresentation. *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111–12 (S.D. Cal. 2011) (citing *Kwikset*, 51 Cal. 4th at 326–27).

In the case at hand, Defendants recycle the same arguments used to attack Plaintiffs' Article III standing. (Mot. 11.) Defendants claim Plaintiffs do not have statutory standing because Plaintiffs did not suffer any injuries or rely on any advertisements when purchasing Defendants' Products. (*Id.* at 12.) However, Plaintiffs specifically allege that, "due to Defendants' misrepresentations, Plaintiffs and the class paid more for the Products they bought than they otherwise would have." (FAC ¶ 46.) Additionally, Plaintiffs reiterate throughout the FAC that, shortly after receiving Defendants' advertisements in the mail, Plaintiffs contacted Defendants to schedule a consultation based on the mailed advertisement's alleged promotional discounts, which eventually resulted in a contract. (FAC ¶¶ 52–54.) These allegations satisfy the threshold requirements of an economic injury and reliance on purported material misrepresentations in Defendants' promotional advertisements. The Court therefore finds that Plaintiffs establish statutory standing under the UCL, CLRA, and FAL.

In conclusion, Plaintiffs satisfy the requirements to establish Article III and California statutory standing. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' FAC for lack of standing.

**C.    CLRA Notice Requirement**

Defendants next argue the Court should dismiss Plaintiffs' second cause of action for violations of the CLRA because Plaintiffs failed to serve the required thirty-day notice letter required by the statute at least thirty days prior to commencing the instant action. (Mot. 12.) The Court finds that the CLRA thirty-day notice letter is not required in the present case because Plaintiffs seek only injunctive relief under the CLRA.

Under the CLRA, plaintiffs are required to provide notice to a defendant of any alleged CLRA violations by certified or registered mail "thirty days or more prior to the commencement of an action for damages." Cal. Civ. Code. § 1782(a). The notice must also specify the "particular alleged violations" of the CLRA and demand that the

defendant "correct, repair, replace, or otherwise rectify" the alleged violations. *Id.* If the defendant corrects the alleged wrongs or indicates it will make corrections within a reasonable time, the plaintiff cannot file a suit seeking damages. *Id.* § 1782(c). However, a thirty-day notice letter is not required where a plaintiff seeks only injunctive relief under "specific provisions of Section 1770" of the CLRA. *Id.* § 1782(d).

In the instant action, Plaintiffs assert a cause of action for CLRA violations seeking—exclusively—injunctive relief under the CLRA. (Compl. ¶¶ 87–88, ECF No. 1; FAC ¶ 104.) Thus, Plaintiffs are not required under the CLRA to send Defendants a thirty-day notice letter because Plaintiffs do not seek CLRA-specific damages. (*See* Compl. ¶¶ 87–88; FAC ¶ 104.) Furthermore, Plaintiffs properly plead their request for injunctive relief, citing valid and applicable provisions of Section 1770 of the CLRA. (FAC ¶¶ 94–104.)

Accordingly, the Court denies Defendants' motion to dismiss as to Plaintiffs' CLRA cause of action on this basis.

### D.  Deceptive Advertising

Defendants' move to dismiss Plaintiffs' FAC on the grounds that the advertisements at-issue are not deceptive as a matter of law. (Mot. 13, 17.) The Court finds this issue to be more appropriately resolved on a motion for summary judgment once all discovery matters have been exhausted. As such, the Court denies Defendants' motion to dismiss on this basis.

### E.  FTC Regulations & Statutory Safe Harbor Doctrine

Defendants argue Plaintiffs' UCL, CLRA, and FAL causes of action fail and should be dismissed because Defendants' conduct and advertisements are permitted by Federal Trade Commission ("FTC") regulation guidelines and therefore Defendants' advertisements are protected from legal claims under a statutory "safe harbor" doctrine. (Mot. 17, 19.) In California, UCL, CLRA, and FAL "claims are subject to the safe harbor doctrine, which precludes plaintiffs from bringing claims

based on 'actions the Legislature permits.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016). Upon review of the asserted FTC regulations, the Court determines Defendants' alleged conduct is not expressly permitted by regulation and is therefore not protected by the safe harbor doctrine. As such, Plaintiffs' UCL, CLRA, and FAL causes of action do not fail on this basis.

First, to contextualize the "safe harbor" doctrine in relation to UCL, CLRA, and FAL statutory claims, the Court turns to the Ninth Circuit and California Supreme Court. The California Supreme Court has explained, "[s]pecific legislation may limit the judiciary's power to declare conduct unfair[,] and [i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Davis v. HSBC Bank*, 691 F.3d 1152, 1164 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)). Thus, "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns Inc.*, 20 Cal. 4th at 182. "To fall within the safe harbor, the challenged conduct must be affirmatively permitted by statute—the doctrine does not immunize from liability conduct that is merely not unlawful." *Ebner*, 838 F.3d at 963.

Defendants argue their alleged marketing conduct is permitted by 16 C.F.R § 233.4 and contend their advertisements are therefore protected from UCL, CLRA, and FAL claims under the safe harbor doctrine. (Mot. 15 (citing 16 C.F.R. § 233.4 ("Bargain offers based upon the purchase of other merchandise")).) Section 233.4 addresses advertisement offers where a buyer must first purchase a regular priced item to trigger a discount bargain on an additional, secondary item. 16 C.F.R. § 233.4. More specifically, the types of offers discussed in § 233.4 are "'Free,' 'Buy One-Get One Free,' '2-For-1 Sale,' 'Half Price Sale,' '1¢ Sale,' '50% Off,' etc.," where the buyer must first purchase an article at full price to receive the advertised benefit. *Id.* § 233.4(a). Section 233.4 does not encompass the type of discount bargain Plaintiffs

allege Defendants deceptively offer, nor is it the type of discount offered in Defendants' advertisements.

Instead, Plaintiffs allege Defendants display fictitious regular list prices and continuously advertise "purported time-limited, '__%' off' sales off of those prices." (FAC ¶¶ 25, 31.) Plaintiffs further allege Defendants' conduct leads reasonable consumers to believe Defendants' advertising means the Products are "regularly and formerly retailed at the list price, and are being sold at a '__% off' discount for a limited time." (*Id.* ¶ 42.) Plaintiffs argue that Defendants' alleged conduct leads consumers to believe they are receiving a product "worth more at a bargain price because a time-limited sale is running, when in fact they are paying full price for a product with a lower value than advertised." (Opp'n Mot. ("Opp'n") 14, ECF No. 39.)

In light of Plaintiffs' allegations, the relevant FTC regulation for a safe harbor analysis is § 233.1, addressing former price comparisons for products and bargain offers. *See* 16 C.F.R. § 233.1 ("Former price comparisons"). The language in this section expressly outlines various scenarios where a seller's former price will be construed as "fictitious" and likely in violation of unfair competition laws:

> If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

*Id*. § 233.1(a). In this case, Plaintiffs allege Defendants' advertisements display fictious list prices, promote fake discounts, and lead consumers to believe they are getting a "limited-time" bargain price—when, in reality, the alleged bargain price is the just the regularly sold price. (FAC ¶¶ 36–40.) The above language in § 233.1 directly addresses the core issues of Plaintiffs' claims in the FAC and is the proper FTC regulation section for a safe harbor analysis. The Court the does not find any

11

indication that Defendants' discount scheme contained the type of offers in § 233.4, such as "Buy One-Get One Free," or "2-For-1 Sale." (*See generally* FAC); *see also* 16 C.F.R. § 233.4. Accordingly, any reliance on § 233.4 for the purpose of a safe harbor analysis is decidedly misplaced. Upon reviewing all facts in light of § 233.1, the Court finds Defendants' conduct is not permitted by the language of §233.1.

As such, Defendants' alleged conduct is not protected by the FTC safe harbor doctrine and the Court denies Defendants' challenge to Plaintiffs' UCL, CLRA, and FAL causes of action.

### F. Breach of Contract

Defendants seek to dismiss Plaintiffs' fourth cause of action for breach of contract[2] on the grounds that: (1) Mirzatagi was not damaged as a result of Defendants' alleged breach of the July 17, 2023 contract; and (2) Nabiyev is a third-party incidental beneficiary and thus has no right to enforce the contract. (Mot. 20–21.) The Court finds Plaintiffs sufficiently allege their fourth cause of action for breach of contract.

#### 1. *Mirzatagi's Breach of Contract Claim*

Neither party disputes that Mirzatagi entered into a contract with Closet World. (Mot. 20; Opp'n 17.) Instead, Defendants argue Mirzatagi cannot bring a breach of contract claim because she did not pay any personal money toward the purchase of the Products or pay any money to Closet World. (Mot. 20.) The crux of this dispute is whether the funds paid to Closet World from Plaintiffs' joint account are considered both Mirzatagi and Nabiyev's money, or solely Nabiyev's. In California, each owner of a joint bank account is entitled to all funds in the joint account. *Lee v. Yang*, 111 Cal. App. 4th 481, 490 (2003). Plaintiffs have made clear that the funds Nabiyev used to purchase the Products were taken from a joint bank account held by Nabiyev

---

[2] Under California state law, "[a] cause of action for breach of contract requires proof of four elements: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

and Mirzatagi. (FAC ¶ 57.) Therefore, Nabiyev and Mirzatagi jointly owned the money used to pay Closet World and Mirzatagi's alleged economic damages resulting from Defendants' conduct are sufficient to state a breach of contract claim. The Court denies Defendants' motion to dismiss Mirzatagi's fourth cause of action for breach of contract.

  2. *Nabiyev's Breach of Contract Claim*

The Ninth Circuit instructs that, "[b]efore a third party can recover under a contract, it must show that . . . it is an intended beneficiary of the contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 662 (N.D. Cal. 2019).

In the case at bar, Nabiyev alleges he contacted Closet World for the July 2022 in-home consultation after receiving Defendants' mailed advertisement. (FAC ¶ 52.) The in-home consultation was for and occurred in the shared residence of Nabiyev and Mirzatagi. *Id.* The initial quote listed two separate closet orders labeled "Yours" in reference to the closet for Nabiyev's room and "Mom's" in reference to the closet for Mirzatagi's room. (*Id.* ¶ 54.) Nabiyev's email and phone number are listed as the primary contact information on the invoice Plaintiffs used to contract with Defendants for their Products. (*Id.* ¶ 57.) Thus, it is clear Plaintiffs purchased Closet World's Products for a home in which Nabiyev resided. At the very least, Plaintiffs purchased a closet specifically for Nabiyev's room, i.e. "Yours," which indicates they intended Nabiyev to benefit from the July 17, 2022 contract. The Court finds Plaintiffs sufficiently allege facts establishing Nabiyev is an intended third-party beneficiary with a right to enforce the contract.

As such, Nabiyev has a right to bring this initial breach of contract claim

against the Defendants and the Court denies Defendants' motion to dismiss Nabiyev's fourth cause of action for breach of contract

### G.     Express Warranty

Defendants next move to dismiss Plaintiffs' fifth cause of action, for breach of express warranty, arguing that Plaintiffs did not rely on the representations in Closet World's advertisements to make the July 17, 2022 purchase. (Mot. 22.) Upon review of the pleadings, the Court determines Plaintiffs sufficiently state a cause of action for breach of express warranty.

To successfully plead a cause of action for breach of express warranty, "a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1173 (C.D. Cal. 2022) (citing *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013)). "Product advertisements, brochures, or packaging can serve to create part of an express warranty." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) (citing Cal. Comm. Code § 2313(1)(b)). When advertisements create an express warranty, courts do not require that a plaintiff rely on an individual advertisement to form the basis of the bargain. *Id.* (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1183 (C.D. Cal. 2010)). Instead, plaintiffs need allege only that they were "actually exposed to the advertising." *Id.*

In the present case, Defendants argue that Plaintiffs' breach of express warranty claim fails because, first, Nabiyev did not rely on Closet World's advertisement to make the July 17, 2022 purchase; and, second, Plaintiffs "failed to allege that Closet World did not fulfill any obligations set forth in the offer." (Mot. 21–22.)

As to Defendants' first argument, Plaintiffs have clearly articulated in the FAC that they received Defendants' advertisements in the mail and shortly thereafter

contacted Defendant to schedule a consultation, ultimately leading to a contract. (FAC ¶¶ 52–54.) Thus, Plaintiffs allege they were exposed to Defendants' advertisements as well as the representations and express warranties therein. This is sufficient at this stage to establish Defendants' advertisements formed part of the "basis of the bargain." *Cho*, 636 F. Supp. 3d at 1173.

Regarding Defendants' second argument, Plaintiffs distinctly allege that Closet World did not fulfill obligations set forth in the offer. (FAC ¶¶ 65, 136.) More specifically, Plaintiffs claim Defendants did not fulfill their promise to "provide Plaintiffs with a discounted price, as advertised." (*Id.*) Thus, Plaintiffs identify the specific obligations they allege Defendants failed to fulfill.

Therefore, the Court finds Plaintiffs sufficiently state a cause of action for breach of express warranty. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' fifth cause of action.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' FAC. (ECF No. 25.)

**IT IS SO ORDERED.**

November 15, 2023

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**